1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NICOLE MASSENGALE,                )    No. 1:16-CV-03095-LRS
                                  )
                Plaintiff,        )    **ORDER GRANTING**
                                  )    **DEFENDANT'S MOTION FOR**
        vs.                       )    **SUMMARY JUDGMENT,**
                                  )    ***INTER ALIA***
                                  )
NANCY A. BERRYHILL,               )
Acting Commissioner of Social     )
Security,                         )
                                  )
                Defendant.        )
_____ )

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment
(ECF No. 15) and the Defendant's Motion For Summary Judgment (ECF No. 19).

## JURISDICTION

Nicole Massengale, Plaintiff, protectively applied for Title XVI Supplemental
Security Income benefits (SSI) on January 10, 2011, alleging disability beginning
December 1, 2010. The application was denied initially and on reconsideration.
Plaintiff timely requested a hearing which was held on December 9, 2014, before
Administrative Law Judge (ALJ) Tom Morris. Plaintiff testified at the hearing, as did
Vocational Expert (VE) Kimberly Mullinax. On February 10, 2015, the ALJ issued
a decision finding the Plaintiff not disabled. The Appeals Council denied a request
for review of the ALJ's decision, making that decision the Commissioner's final

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

decision subject to judicial review.  The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here.  At the time of the administrative hearing, Plaintiff was 29 years old.  She does not have any past relevant work experience.  Plaintiff was 25 years old on her alleged disability onset date of December 1, 2010.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in:  1) failing to find that Plaintiff's migraine headaches and PTSD (post-traumatic stress disorder) are "severe" impairments; 2) 2) not offering adequate reasons to discount the opinions of Plaintiff's treating and examining medical and mental health providers; and 3) discounting Plaintiff's credibility.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 416.920; *Bowen v. Yuckert*,

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being: degenerative disk disease of the lumbar spine, obesity, depressive disorder NOS (not otherwise specified), affective disorder NOS, anxiety disorder NOS, and personality disorder; 2) Plaintiff's impairments do not meet or equal any of the impairments listed in  20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to lift and carry ten pounds frequently and twenty pounds occasionally; she can stand and/or walk for four hours in an eight hour workday and sit for six hours; she cannot climb ladders, rope, or scaffolding; she can occasionally crawl, crouch, kneel and stoop; she can frequently climb ramps or stairs; she should avoid concentrated exposure to hazards or pulmonary irritants; she is capable of completing unskilled simple routine work tasks with customary breaks and lunch, as well as more complex work tasks for an hour before having to return to simple routine tasks; she can have frequent contact with supervisors and co-workers; she can have occasional contact with the public and incidental contact with the public is not precluded; she should have a low stress environment which is defined as no more than occasional changes in the work setting; her work should emphasize dealing with things/objects rather than people; she cannot perform work that requires a set rate of production (e.g. assembly work), but can perform goal -oriented work (e.g. office cleaner or other occupations where the pace is established by the individual rather than a machine); and 4) Plaintiff's RFC allows her to perform jobs existing in significant numbers in the national economy as identified by the VE, including escort vehicle driver and document preparer.  Accordingly, the ALJ concluded the Plaintiff has not been under a disability since January 10, 2011.

**CREDIBILITY**

Where, as here, the Plaintiff has produced objective medical evidence of an

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014). "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [her] testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)*. See also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered: 1) claimant's reputation for truthfulness;  2) inconsistencies in the claimant's testimony or between [her] testimony and his conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).  Other relevant factors include whether the claimant takes medication or undergoes treatment for the symptoms and whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).

The ALJ noted that at her August 2012 hearing,[1] Plaintiff asserted that her anxiety prevented her from using public transportation or being around people and that she reported she would stay in her residence for prolonged periods because of mental health issues.  (AR at p. 27).  The ALJ noted that at the December 2014 hearing, Plaintiff described a worsening ability to manage stress and testified the she often isolated herself or lashed out at other people.  (AR at p. 27).  At the December

---

[1] The ALJ rendered a decision finding the Plaintiff not disabled following the conclusion of this hearing, but the decision was reversed and remanded by the Appeals Council to obtain supplemental vocational evidence.  (AR at pp. 169-181).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

2014 hearing, Plaintiff acknowledged sporadic mental health treatment over the years, stating that she has difficulty talking about her past or her problems. (AR at p. 100). She also acknowledged having been "slack" in taking prescription medications. (AR at p. 104). The ALJ concluded that Plaintiff had "given notably inconsistent displays and reports of psychological functioning, particularly when seeking state assistance," that "[h]er longitudinal psychological signs indicate generally intact psychological functioning" and that "[h]er allegations of psychological disability are also inconsistent with her lack of interest or persistence in mental health treatment." (AR at p. 27). These are clear and convincing reasons for discounting Plaintiff's credibility which are supported by substantial evidence in the record as set forth below.

While Plaintiff was seen a number of times by mental health providers for assessment and evaluation, the record confirms Plaintiff's consistent failure to show up for appointments and engage in mental health treatment, and a consistent failure to take prescribed medication for mental health issues.

In May 2010, Russell Anderson,  M.S.W., an intake specialist with Central Washington Comprehensive Mental Health (CWCMH),  noted that Plaintiff was not currently on psychiatric medication and had not been on any for the past two years. (AR at p. 558).

In November 2010, Christopher Clark, M.Ed., a Licensed Mental Health Counselor (LMHC) at CWCMH, noted that Plaintiff had not been on psychiatric medications for the past year and opined she would require "long and arduous psychotherapy[] to attenuate the anxiety and negative mood states that contribute to her inability to maintain performance in a competitive work environment." (AR at p. 438).

In June 2012  Philip G. Barnard, Ph.D., evaluated the Plaintiff and indicated she "should be participating in individual counseling on an every other week basis

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 7**

and be taking psychotropic medications for depression and anxiety." (AR at pp. 630-31).

Plaintiff returned to CWCMH in August 2012 for another assessment, nearly two years after her last assessment there. LMHC Clark recommended Plaintiff be placed into "Level 1 Care, with at least 6 months anticipated length of stay in this treatment episode." (AR at pp. 653-54). He noted that Plaintiff had "received jail-based services in late 2011-early 2012, over a three month period, with medication management." (AR at pp. 652-53). In fact, in July 2011, Plaintiff reported to Peggy Davenport, M.S.C.P. (Master of Science Clinical Psychology) at Yakima Neighborhood Health Services (YNHS), that the medication she took in jail "really worked." (AR at p. 646). As explained below, this medication appears to have been Celexa, an antidepressant generically known as citalopram hydrobromide. In August 2012, Peggy Champoux, M.S.W. at CWCMH, noted that Plaintiff was on medication when she was incarcerated and that it was helpful, but that in the past, Plaintiff did not "follow through." (AR at p. 785).

On January 11, 2013, Plaintiff underwent a "Re-Evaluation" assessment by Mr. Anderson at CWCMH. Anderson's report indicated Plaintiff was "self-referred for services" and that she was a former client who last sought services in August 2012. (AR at p. 753). Plaintiff indicated she had missed some appointments with the result that she was discharged from CWCMH. (AR at p. 753). Plaintiff was to be referred once again to Level 1 Care for an estimated 6 months of treatment. (AR at p. 757). She was cautioned about CWCMH's no-show policy. (AR at p. 757).

On March 27, 2014, Plaintiff was seen at CWCMH by Mr. Clark seeking a resumption of services. (AR at p. 660). Clark's assessment indicated Plaintiff was last seen in January 2013 for her last reassessment and referred for continuing services, but did not follow up on those services because of what the Plaintiff attributed to as her homelessness. Plaintiff was once again referred for treatment of

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

clinical depression and reminded of the attendance requirements in order to maintain active treatment status.  (AR at p. 663).

In May of 2014, R.A. Cline, Psy. D, evaluated the Plaintiff and recommended she attend mental health therapy at least once a week and that she have a current psychiatric consult "to revisit the potential usefulness of medications."  (AR at p. 668).

In November 2014, Plaintiff underwent yet another re-evaluation assessment at CWCMH by Mr. Anderson.  He noted that Plaintiff was evaluated on March 27, 2014, "but failed to engage in treatment at that time."  She indicated that because of a "terrible memory," she kept missing appointments and therefore, had not been in treatment since August 2012.  Anderson indicated Plaintiff was "at risk of continuing to experience depression, audio hallucinations, and anxiety without psychiatric intervention."  He recommended referral for individual therapy to address Plaintiff's depression and to increase her coping skills, and also recommended a psychiatric evaluation for psychiatric medication and management.  (AR at p. 768).  Plaintiff apparently failed to inform Anderson of her recent visits to Yakima Valley Farm Workers Clinic (YVFWC) which are discussed below.

None of the counselors at CWCMH or the psychologists who evaluated Plaintiff offered any explanation or excuse for Plaintiff's failure to show up for appointments, engage in treatment and take medication.  While Plaintiff sporadically showed up for assessments at CWCMH, she apparently was never actually treated there after December 1, 2010.  On the other hand, the record  indicates Plaintiff did regularly show up for appointments at YNHS, her primary medical care provider.  In June 2010, she informed ARNP (Advanced Registered Nurse Practitioner) Edward Liu that she had not taken any medication for depression since 2008. (AR at p. 490). In November 2010, Plaintiff told Peggy Davenport at YNHS that she had seen many

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

therapists in the past who had not helped her.  (AR at p. 494).  Davenport's mental status exam of the Plaintiff did not reveal anything unusual, but she was willing to consider that Plaintiff had a major depressive disorder.  She assigned the Plaintiff a current GAF of 60.[2]  Plaintiff agreed to participate in Cognitive Behavioral Therapy (CBT) and was directed to follow up within three weeks.  (AR at pp. 495-96).  Plaintiff expressed hope to get her "GAU incapacity[3] and was directed to CWCMH for this," but stated "she [did] not want to be involved in mental health again."  (AR at p. 496).  In June 2011, ARNP Liu noted that Plaintiff was taking Celexa (AR at p. 539), which it appears she started taking in April 2011 while incarcerated.  (AR at p. 505).  In July 2011, Plaintiff returned to see Davenport at YNHS, indicating she had returned to therapy today "because I have to see someone to keep my funding."  (AR at p. 646).  In August 2011, Plaintiff reported to Davenport that the Celexa seemed to be working (AR at p. 642), that "she is not as irritable and feels like getting up and getting things done," and that she would "follow up with treatment when she  is released from jail."  (AR at p. 644).  Davenport's mental status exam of Plaintiff once

---

[2] A Global Assessment of Functioning (GAF) score of 51-60 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

[3] General Assistance Unemployable (GAU) is a Washington state-funded program providing cash and medical benefits for persons who are physically and/or mentally incapacitated and unemployable for 90 days from the date of application.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

again appeared to be normal and Davenport once again assigned the Plaintiff a current GAF of 60.  (AR at p. 644).

ARNP Nancy D. Schwarzkopf at YNHS started the Plaintiff on citalopram in January 2013.  (AR at p. 850).  She noted that Plaintiff was positive for "appropriate interaction" (AR at p. 852), but also positive for anhedonia[4], was not agitated, was anxious, denied hopelessness, and did not have pressured speech.  (AR at p. 854).  She commented that Plaintiff's judgment and insight was intact.  (AR at p. 854).  In May 2013, ARNP Brady K. Moss reported that Plaintiff was not taking her citalopram.  (AR at p. 847).   In July 2013, ARNP Schwarzkopf noted that Plaintiff was again positive for "appropriate interaction," (AR at p. 840), as well as positive for anhedonia and was anxious.  (AR at p. 841).  Citalopram was not among her listed medications at that time (AR at p. 841), nor was it in November 2013 when Plaintiff was seen by ARNP Moss.  (AR at p. 835).  In January 2014, ARNP Schwarzkopf "added back" citalopram to "improve [Plaintiff's] anxiety."  (AR at p. 811). Schwarzkopf reported that Plaintiff remained positive for "appropriate interaction," (AR at p. 814), but was now "negative for anhedonia, is not agitated, is anxious, does not have pressured speech." (AR at p. 815).  In March and April 2014, ARNP Moss reported that Plaintiff exhibited no unusual anxiety or depression.  Moss's notes indicated Plaintiff was taking citalopram.  (AR at pp. 674 and 680).  In June 2014, Jeremiah Crank, M.D., noted that Plaintiff was not taking citalopram as prescribed. (AR at p. 795).[5]

---

[4] Inability to experience pleasure from activities usually found to be enjoyable.

[5] Although the visit occurred in June, the doctor's note appears to have not been generated until November 2014.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

1    In July 2014, Plaintiff appeared at the Yakima Valley Farm Workers Clinic

2    (YVFWC).  She told PA-C (Physician's Assistant-Certified) Jennifer Williams she

3    had a long history of anxiety and depression and that "[s]he used to go to

4    comprehensive mental health but she keeps getting terminated because of failed

5    appointments." (AR at p. 719).  Plaintiff was unable to recall any medications she

6    had been on, other than that Zoloft did not help her.  (AR at p. 719).  Williams and

7    the Plaintiff "discussed depression and anxiety in general" and the Plaintiff indicated

8    "she was interested in going back on medication" and so Williams intended to start

9    the Plaintiff on citalopram and recheck her in two weeks.  (AR at p. 721).  Plaintiff

10   obviously failed to mention, for whatever reason, that she had recently been on

11   citalopram through a different provider, that being YNHS.

12   In September 2014, Plaintiff reported to PA-C Williams that she stopped taking

13   citalopram after just a couple of days because it was causing nausea, but then she re-

14   started it and there was no nausea, but she took it for only a week.  (AR at p. 867).

15   According to Williams, Plaintiff "does not like taking medications (sic) so she is not

16   compliant." (AR at p. 867).  Plaintiff was advised to go back on the citalopram and

17   give it a try for four to six weeks.  (AR at p. 869).

18   In October 2014, PA-C Williams noted that Plaintiff "has not given the

19   citalopram a fair trial." (AR at p. 865).  On that occasion, Plaintiff informed Williams

20   she was not taking any of her medications and that three weeks ago she had tossed all

21   of them in the garbage.  (AR at p. 865).  According to Williams, Plaintiff "can't really

22   give me a good reason for doing that (sic) just says that she wanted to clean out her

23   cupboard so that when she picked up her meds again she would know what she was

24   to be taking." (AR  at p. 865).  Williams observed that Plaintiff was not doing very

25   well since she stopped her medication.  (AR at p. 865).  Williams indicated that

26   Plaintiff "called in last week needing a letter dictated for DSHS [Department of

27

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

Social and Health Services] that I am seeing her for her mental health care right now because she can't get back in to comprehensive mental health right now due to failed appointments." (AR at p. 865). Plaintiff indicated she did not have a problem taking medications and that she did not have any questions about her medications. (AR at p. 866). Williams emphasized that Plaintiff needed to get back on her meds. (AR at p. 866).

**OPINIONS OF MEDICAL SOURCES**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id.* "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. §416.913(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §416.913(d). An ALJ can reject opinions from these "other source[s]" by providing "germane" reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

In May 2010, Russell Anderson at CWCMH, completed a "Psychological/Psychiatric Evaluation" form in conjunction with Plaintiff's application for financial assistance from Washington State Department of Social & Health Services (DSHS).   He diagnosed the Plaintiff with "[m]ajor depressive disorder, recurrent, severe, with psychotic features" and PTSD.   He assigned the Plaintiff a current GAF of 40.[6]  (AR at p. 556).  Anderson opined that Plaintiff was markedly limited in her abilities to relate appropriately to co-workers and supervisors, respond appropriately to and tolerate the pressures and expectations of a normal work setting.  (AR at p. 557).  He noted that Plaintiff was not currently on psychiatric medication, had not been on any for the past two years, and opined she was too incapacitated to work.  (AR at p. 558).  Anderson considered the Plaintiff to be "seriously disturbed," noted she had not been employed for the past six years, and opined that she appeared "to have a refractory course of mood disturbance and has not been able to demonstrate any improvement in her level of social or occupational functioning."  (AR at p. 559).  The ALJ found  that Anderson's opinions were "inconsistent with the [Plaintiff's] activities since her alleged onset date, specifically her periods of temporary work, her earning a GED diploma in late 2013, and her attendance of college classes for two quarters in 2014."  (AR at p. 33).  Furthermore, he found that Anderson's "basis for his assessment of psychological disability

---

[6] A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . . .)." *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

consisted solely of cursory statements based on the claimant's subjective reporting." (AR at p. 33).[7]

In November 2010, Christopher Clark at CWCMH completed a DSHS evaluation form regarding Plaintiff. Clark diagnosed the Plaintiff with chronic Post-Traumatic Stress Disorder (PTSD); Major Depression, recurrent, severe, with mood-congruent psychotic features; and borderline personality disorder. (AR at p. 436). He assessed her a current GAF score as 48 and indicated that was also her highest GAF in the past year.[8] The basis for this rating was "[s]erious impairment in social and occupational functioning, as evidenced by inability to leave her residence for prolonged periods of time, without interference from anxiety." (AR at p. 436). He indicated that Plaintiff was markedly limited ("very significant interference") in her abilities to learn new tasks, to communicate and perform effectively in a work setting

---

[7] As the Commissioner acknowledges, the ALJ was mistaken in his assertion that Anderson had "no documented familiarity with the claimant except for a single assessment in the context of her potential receipt of state assistance." (AR at p. 32). On the May 2010 evaluation form itself, Anderson documented his familiarity with the Plaintiff, noting he reviewed "[i]ncapacity evaluations" from August 2005, March 2006, and April 2007, as well as a CWCMH intake evaluation from October 2007. (AR at p. 554).

[8] A GAF score of 41-50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 15**

with limited public contact, and to maintain appropriate behavior in a work setting. (AR a p. 437). He indicated Plaintiff was severely limited ("inability to perform") in her ability to communicate and perform effectively in a work setting with public contact. (AR at p. 437). He indicated that her symptoms had not abated since her first evaluation by him in 2005. (AR at p. 438). He opined that Plaintiff met the criteria for being chronically mentally ill and that she had "acquired a pervasive & persistent style of interpersonal functioning that contributes to her anxiety and depression." (AR at p. 438). The ALJ discounted Clark's opinions on the basis that he "gave minimal explanation for his multifaceted assessment of psychological disability" and the explanation he provided "was based entirely on the claimant' subjective reporting of her symptoms and limitations." (AR at p. 33).

In June 2012, Dr. Barnard completed a DSHS evaluation form in which he diagnosed the Plaintiff with generalized anxiety disorder (onset date unknown), dysthymic disorder (onset date 2004), and personality disorder (onset date at age 18), with a current GAF of 60 and that being her highest GAF attained within the past year. (AR at pp. 629-30). Plaintiff informed Dr. Barnard that she stayed home all day, did not want to be around other people, played video games all day, and communicated with friends on the computer or the XBox. (AR at p. 630). He opined it was probable that Plaintiff could not be employed in any capacity. (AR at pp. 630-31). The ALJ discounted Dr. Barnard's opinion that Plaintiff's depression would affect her ability to attend work and concentrate for the reason that Plaintiff "has routinely displayed normal attention and concentration in treatment settings." (AR at pp. 33-34). It appears that "treatment settings" refers to Plaintiff's visits at YNHS and YVFWC. Furthermore, the ALJ found Dr. Barnard appeared to base his "vague" opinions "solely on the claimant's subjective reporting of symptoms." (AR at p. 34).
///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

In May of 2014, Dr. Cline competed a DSHS evaluation form regarding Plaintiff. He diagnosed Plaintiff with chronic Post-Traumatic Stress Disorder and Major Depressive Disorder, recurrent and severe with psychotic features. (AR at p. 667). Plaintiff reported that she would lay in bed for days on end and barely attend to her needs, and that she heard voices and talked to them on occasion before realizing there was no one there. (AR at p. 666). Dr. Cline assigned the Plaintiff a current GAF of 50, with the highest GAF in the past year also being 50. He opined that Plaintiff was markedly limited[9] in her abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; and maintain appropriate behavior in a work setting. (AR at pp. 667-68).

As with Anderson, Clark and Dr. Barnard, the ALJ found that Dr. Cline appeared "to have relied heavily on the [Plaintiff's] subjective reporting when forming his opinions." (AR at p. 34). He added that Dr. Cline's opinions "are otherwise inconsistent with the [Plaintiff's] activities following her application date [January 10, 2011], her longitudinal psychological findings, and her limited persistence with mental health care." (AR at p. 34). Furthermore, according to the ALJ:

> [Plaintiff's] treatment records prior to Dr. Cline's state agency evaluation are notably inconsistent with a finding of psychological disability. During medical care in January 2013, the [Plaintiff] attributed her depression to financial concerns. She displayed mildly blunt effect, fluent and non-pressured speech, directed thought process, intact judgment and insight, and grossly normal intellect. She was [restarted] on Celexa [citation omitted]. Subsequent primary medical care in 2013 documents appropriate interactions and normal intellect despite the [Plaintiff's] psychological symptoms. These treatment records do not include Celexa as an ongoing medication after May 2013, and do not document[] any other treatment for mental health symptoms.

---

[9] Defined as a "very significant limitation."

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 17**

During this period, [Plaintiff] reported working for a fast food restaurant [citation omitted]. In January 2014, [Plaintiff] was restarted on Celexa, at which time she denied having anhedonia and reported having appropriate interactions. She exhibited an irritable affect and normal intellect [citation omitted]. During medical care in March 2014 and April 2014, [Plaintiff] repeatedly demonstrated "no unusual anxiety or evidence of depression" [citation omitted].

(AR at p. 34).

The ALJ offered "germane" reasons for discounting the opinions of Anderson and Clark, and "specific and legitimate reasons" for discounting the opinions of the examining psychologists, Drs. Barnard and Cline. None of these individuals treated the Plaintiff during the relevant period and in the case of Anderson and Clark, were not given the opportunity to treat her because of her repeated failure to follow up on the treatment recommended for her at CWCMH. The short and summary DSHS evaluations performed by each of these providers indicated that Plaintiff would benefit from therapy and medication, but as the record reflects, Plaintiff engaged in mental health therapy very sporadically and took medication on and off as she desired. Plaintiff has offered no persuasive explanation for this failure. As the ALJ pointed out, "treatment" records from YNHS and YVFWC- "primary medical care"- call into question the severity of the impact of Plaintiff's psychological impairments on her ability to function. And to the extent that Anderson, Clark, Dr. Barnard and Dr. Cline relied on Plaintiff's subjective reporting, and it appears they did so to a significant extent, particularly in the case of Drs. Barnard and Cline who saw the Plaintiff only once, it was legitimate to discount their opinions because of the legitimate concerns regarding Plaintiff's credibility, discussed *supra*.

The ALJ gave significant weight to the opinions of two non-examining state agency psychological consultants, James Bailey, Ph.D., and Michael L. Brown, Ph.D.. Dr. Bailey's review of the medical record occurred in April 2011, and Dr.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 18**

Brown's review occurred in September 2011. (AR at pp. 148-50; 161-63). The ALJ rejected any suggestion by these two doctors that Plaintiff could not work in coordination with coworkers and should avoid contact with the general public. The basis for the ALJ's rejection was because of Plaintiff's "work activities since her applications, her other activities since her applications, and her longitudinal psychological findings in treatment settings." (AR at p. 35). The opinions of non-examining consultative physicians may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinions of Drs. Bailey and Brown, as incorporated in the ALJ's RFC determination, are supported by other evidence in the record, as discussed above, and that other evidence supports the ALJ's determination that Plaintiff could have frequent contact with supervisors and coworkers and occasional contact with the public.

**SEVERE IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. § 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. § 416.908.

Plaintiff contends the ALJ erred in failing to consider at Step Two the Plaintiff's migraine headaches and PTSD. In November 2014, Plaintiff told Mr. Anderson at CWCMH that she was having problems with chronic pain and might need surgery "to reduce the brain fluid pressure at the base of my skull, which is

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 19**

causing my migraine headaches." (AR at p. 767). Remarks by Plaintiff's counsel at the December 9, 2014 hearing indicated Plaintiff had undergone an MRI showing fluid in her brain, but that he had yet to receive the records. Counsel indicated he was going to request those records once again. (AR at p. 84). Although the ALJ declined to hold the record open for those records, he indicated that he thought counsel had enough time to obtain those records before the ALJ made his decision. (AR at p. 118). The ALJ's decision was issued on February 10, 2015, two months after the hearing. This appears to have been enough time to obtain the records. There is no indication that Plaintiff's counsel made a second request after the hearing to have the record held open and, as the Commissioner notes, the records, had they been obtained, could have been submitted to the Appeals Council for consideration. Accordingly, the ALJ did not prejudicially exclude admission of further evidence into the record, as alleged by Plaintiff.

The ALJ found that because the Plaintiff's headaches are controlled through compliance with prescribed medication, they do not constitute a "severe" impairment. (AR at p. 22). Plaintiff alleges the ALJ erred in conflating two types of headaches suffered by the Plaintiff (non-migraines and migraines). There are scant references to migraine headaches in the **medical treatment** records, as distinguished from hypertension-related headaches. Indeed, the record to which Plaintiff cites to in her opening and reply briefs is limited to her hearing testimony and the references in Mr. Anderson's November 2014 **mental health** assessment to Plaintiff having problems with migraine headaches and indicating she had an appointment in Seattle in February 2015 "for a consultation to remove excess spinal fluid from the base of her brain." (AR at pp. 764 and 767). Plaintiff does not take issue with the ALJ's finding that Plaintiff's hypertension headaches are controlled with prescribed medication and therefore are not a "severe" impairment

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 20**

which would significantly limit basic work activity. (AR at pp. 21-22). As noted above, a "severe" impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. § 416.908. The medical evidence considered by the ALJ does not establish Plaintiff's migraine headaches as a separate "severe" impairment and therefore, the ALJ did not err in failing to consider them as such.

There are references in the various mental health evaluations to the Plaintiff suffering from PTSD, but the record does not indicate Plaintiff suffered unique functional limitations from PTSD distinct from the limitations caused by the "severe" mental impairments found by the ALJ- depressive disorder NOS, anxiety disorder NOS, and personality disorder NOS. Accordingly, if the ALJ erred in failing to find Plaintiff's PTSD was a separate "severe" impairment, it was a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir. 2005).

## CONCLUSION

Defendant's Motion For Summary Judgment (ECF No. 19) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___8th___ day of March, 2017.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge


**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 21**